UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK COOK,<br><br>Defendant | CRIMINAL NO. 3:16-CR-00312<br><br>(MANNION, D.J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This matter comes before the Court on Defendant's Motion for Pretrial Release Due to COVID-19. (Doc. 288). Defendant, Mark Cook, moves this Court to reconsider its earlier order of detention pursuant to 18 U.S.C. 3142(f), due to the "changed circumstances" of COVID-19. Cook also asserts that he should be released because his continued detention may violate his Eighth Amendment right to be free from cruel and unusual punishment. The Government opposes this motion. (Doc. 293).

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On October 25, 2016, Cook was charged by Indictment with one count of conspiracy to commit sex trafficking by force and coercion, in violation of 18 U.S.C. § 1549(c), three counts of sex trafficking by force and coercion, in violation of 18 U.S.C. § 1591(a) and (b)(1), possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and attempted witness tampering in violation of 18 U.S.C. § 1512(b)(1). (Doc. 15). Following a lengthy detention hearing, the Court held that Cook presented sufficient evidence to rebut the presumption pursuant to 18 U.S.C. § 3142(e)(3) but detention was warranted based on consideration of the factors to be considered under the Bail Reform Act – the nature and circumstances of the offenses charged; the weight of the evidence against the defendant; the

history and characteristics of the defendant; and the danger to the community should he be released. As to the history and characteristics factor, the Court specifically considered Cook's prior criminal history; his participation in criminal activity while on probation, parole or supervision; his history of violence or use of weapons; and his prior violations of probation, parole, or supervised release. In particular, the Court noted that the alleged offenses occurred while Cook was serving a sentence on another conviction in this Court. (Doc. 33).

On December 20, 2016, Cook was charged in a Superseding Indictment that added one count of sex trafficking by force and coercion, one count of attempted sex trafficking by force and coercion, one count of conspiracy to distribute cocaine, one count of wire fraud and altered the time frame for the attempted witness tampering charge. (Doc. 42). At the time of his arraignment, the government sought continued detention and a detention hearing was scheduled for January 18, 2017. (Doc. 46). The Court again ordered Cook detained, finding that the government had established by clear and convincing evidence that there was no condition or combination of conditions which would reasonably assure the safety of the community. (Doc. 49). Cook sought review of this decision by the District Court; that request was denied after a hearing, and Cook was ordered to remain detained. (Doc. 79).

On October 31, 2017, Cook was charged in a Second Superseding Indictment, which added an additional count of sex trafficking by force and coercion, changed the time period for the possession with intent to distribute charge, and specified that at least five victims were involved in the conspiracy to commit sex trafficking charge. (Doc. 97; Doc. 101). After his arraignment on this Second Superseding Indictment, Cook remained detained. (Doc. 106). On July 24, 2018, Cook was charged in a Third Superseding Indictment, which added three

new victims to the conspiracy count, one new overt act, three new sex trafficking counts, a new charge of transporting an individual in interstate commerce for purposes of prostitution, a new charge of persuading an individual to travel in interstate commerce to engage in prostitution and two new drug counts. (Doc. 179). Following his arraignment on this latest indictment, Cook remained detained. (Doc. 181). On May 14, 2019, Cook was charged in a Fourth Superseding Indictment, which again extended the time frame of the conspiracy charge. (Doc. 233). After his arraignment on the Fourth Superseding Indictment, Cook remained detained.

Cook was most recently housed at Pike County Correctional Facility. On April 8, 2020, Cook, through his counsel, filed the instant motion to review detention. (Doc. 288). In his motion, Cook asks this Court to reconsider its previous detention decisions based on the changed circumstances related to COVID-19 and pursuant to 18 U.S.C. § 3142(f). Cook also submits that his continued detention may be in violation of his Eighth Amendment rights. (Doc. 288; Doc. 289). In his motion, Cook asserts that he suffers from a heart condition, as evidenced by a previous heart attack, that he suffered from and been treated for pneumonia on two separate occasions, and that for these reasons, he is more susceptible to respiratory illness such as COVID-19. (Doc. 289). Cook does not provide the Court with or request any specific release plan. Counsel for Cook filed a Notice with the Court on April 10, 2020, indicating that the parties were unable to come to an agreement regarding Cook's release from detention, that the United States Probation Office opposes Cook's release, and that the parties agree that no hearing is necessary on this motion. (Doc. 290). The Government filed its brief in opposition to Cook's motion on April 13, 2020. (Doc. 293).

**II.     DISCUSSION**

   A.   THE COVID-19 PANDEMIC

On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic.[1] The COVID-19 outbreak caused the President of the United States to declare a national emergency and the Governor of the Commonwealth of Pennsylvania to declare a state of emergency.[2] As of the date of this writing, there are 2,471,136 confirmed cases worldwide and 169,006 deaths; in the United States, there are 776,907 confirmed cases and 37,602 deaths.[3] Mindful of the incredible magnitude of this situation, and the extreme health risks associated with COVID-19, the Court will address the motion for pretrial release.

   B.   CONDITIONS AT PIKE COUNTY CORRECTIONAL FACILITY

Attached to the Government's brief in opposition (Doc. 293) are the preventative actions taken by Pike County Correctional Facility in response to the COVID-19 pandemic.

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited April 22, 2020).

(Doc. 293-1). Specifically, the prison implemented an action plan including compliance with all CDC guidance, an aggressive sanitization program, and setting aside two housing units if quarantine becomes necessary. Upon reports of positive tests for the virus within the facility, the inmates were informed and placed on lockdown. All new intakes and all staff members have their temperature taken upon entry to the facility. Additional measures to mitigate the potential for spread of COVID-19 inside the facility, and for the protection of inmates and staff, include the suspension of all visitation except for attorney visits. (Doc. 293-1).

A report to this Court by the United States Marshal Service states that as of April 21, 2020, Pike County Correctional Facility had 40 positive cases of the COVID-19 virus, including 20 staff, 1 USMS detainee (presumably Mr. Cook), 14 Immigration and Customs Enforcement detainees, and five local detainees. Two of the local detainees passed away. The facility is on lockdown status.

### III.   ANALYSIS

Cook asks this Court to reconsider its previous orders detaining him based upon the "changed circumstances" presented by the COVID-19 pandemic. He also asks this Court to consider that his continued detention may be a violation of his Eight Amendment rights. For the following reasons, the Court will deny the motion.[4]

---

[4] In its brief in opposition (Doc. 293), the Government responds fully to Cook's § 3142(f) "changed circumstances" argument, and cursorily responds to his Eighth Amendment argument in a footnote, but also curiously spends a substantial portion of its brief addressing temporary release pursuant to § 3142(i). Cook does not move for release pursuant to § 3142(i), and it would be his burden to establish that such release is warranted. *See United States v.*

A.     R<small>ECONSIDERATION OF</small> D<small>ETENTION</small> O<small>RDER</small> P<small>URSUANT TO</small> § 3142(<small>F</small>)

Cook urges this Court to reconsider its previous detention decisions based upon the "changed circumstances" of the COVID-19 pandemic. 18 U.S.C. § 3142(f) states, in pertinent part, as follows:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).

The Government concedes that the COVID-19 pandemic is new information, but submits that this information should not change the Court's finding that there is no condition or combination of conditions which would assure the safety of the community should Cook be released.

The Bail Reform Act generally requires release of a defendant prior to trial unless a judicial officer determines, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person … and the safety of any other person and

---

*Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court cannot and will not make any finding as to release under (i), but does note that, based on the record before it, it does not appear that such temporary release would be warranted. *See United States v. Veras,*, 2020 WL 1675975 (M.D. Pa. Apr. 6, 2020) (in reviewing a motion for temporary release under § 3142(i) the Court will review (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.).

the community[.]" 18 U.S.C. § 3142(e)(1). In determining whether any conditions of release will be sufficient, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The COVID-19 pandemic, the existence of it at the Pike County Correctional Facility, and even Cook's own symptoms and diagnosis change neither the nature and circumstances of the charged offenses nor the weight of the evidence against Cook. The new information related to COVID-19 has no impact on the Court's determination of either of these factors, which weigh squarely in favor of continued detention. With each superseding indictment, the list of charges and time frame of the alleged offenses grow. The numerous charges against Cook are extremely serious, and include several counts of sex trafficking, drug trafficking, and witness tampering. The government has proffered a great amount of evidence against Cook in the form of numerous cooperating witnesses and other evidence.

The pandemic and Cook's diagnosis do have some bearing, however, on the third factor under the Bail Reform Act, the nature and characteristics of the defendant. Those "characteristics" include the physical and mental health of the defendant, and being diagnosed with the COVID-19 virus is a change in that particular characteristic. However, it

is but one characteristic contemplated by the Bail Reform Act. The balance of Cook's history and characteristics still weighs heavily in favor of detention.

Cook is receiving medical care for COVID-19 while detained, and there is nothing before the Court indicating that he has a plan for medical care should he be released, or that the medical care he might receive in the community is better than that which he is receiving while detained, without continuing to be a threat to the safety of others. *See United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020) (denying motion for pretrial release where defendant tested positive for COVID-19, holding that he is receiving medical care in jail, he has no plan for medical care should he be released, and that there is no evidence that medical care he might receive in the community is better than that which he is receiving in prison, without continuing to be a threat to the safety of others). Cook's criminal history is lengthy and severe, dates back to the 1990s, and includes several convictions for drug-related crimes, one of which is a 2007 conviction in this Court for conspiracy to distribute and possess with intent to distribute crack cocaine. Cook was sentenced to 75 months imprisonment followed by four years of supervised release. His criminal history also includes a failure to comply with the terms of his supervised release, in the form of new criminal charges while on release. The alleged offenses in the instant case occurred while Cook was serving the federal sentence for drug trafficking charges.

Cook has a history of engaging in dangerous behavior, not complying with terms of release, and being unable to follow rules and orders of the Court. Further, Cook's diagnosis, coupled with his apparent inability to follow and comply with rules, means that his release may pose a greater danger to the community as he exposes others to the COVID-19 virus. A

defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020). Cook's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on pretrial release. *United States v. Lee*, 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). It may also place the United States Marshals Service officers at risk if re-apprehending him is necessary. *See United States v. Lunnie*, 4:19-CR-00180 KGB, 2020 WL 1644495, at *5 (E.D. Ark. Apr. 2, 2020).

      Finally, the Court considers the fourth detention factor, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release.*" *Lee*, 2020 WL 1541049, at *4–5; 18 U.S.C. § 3142(g)(4) (emphases added). Cook's release, which the Court has previously determined on several occasions to pose a danger to the community, now poses a greater danger. That danger now includes not only this Court's previous conclusion that he will continue to engage in the same types of unlawful and potentially dangerous conduct that led to the charges in this case, but also the heightened safety risks that Cook's release poses to the probation officers tasked with monitoring his behavior if he were to be released on supervision. *Lee*, 2020 WL 1541049, at *4-5; *see also United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (motion for release denied, in part, where defendant did not convince the court that her release would not pose a danger to the community). Cook may also, as already stated, pose a greater danger to the community as he exposes others to the COVID-19 virus.

Based on the foregoing, the Court finds that there is nothing about the new circumstances of the COVID-19 pandemic, or Cook's diagnosis, that has a material impact on any of the factors previously considered by this Court in determining – on more than one occasion – that Cook should be detained. Therefore, Cook's motion to reopen the Court's detention decision pursuant to 18 U.S.C. § 3142(f) is denied.

B.    VIOLATION OF EIGHTH AMENDMENT RIGHTS

Cook also argues that his release may be warranted as his continued confinement while exposed to COVID-19 may violate the Eighth Amendment's prohibition against cruel and unusual punishment. In making this argument, Cook relies on the Supreme Court's decision in *Helling v McKinney*, 509 U.S. 25 (1993), in which the Court found that the plaintiff, who was assigned to a cell with a smoker, stated a cause of action under the Eighth Amendment, as his exposure to tobacco smoke posed an unreasonable risk of serious damage to his future health. The Government's only argument in response to this is that Cook's Eighth Amendment argument "ignores the reality that release also exposes him and others to COVID-19" and that the Pike County Correctional Facility has put measures in place to protect Cook and other inmates from the virus.[5] (Doc. 293, at 30, n. 17).

The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional

---

[5] The Court is compelled to note, of course, that at this juncture, Cook has been exposed and has contracted the virus. That fact does not change its analysis of Cook's constitutional claim.

guarantees traditionally associated with criminal prosecutions." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005); quoting *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citation and internal quotations omitted). Thus, the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until "after sentence and conviction." *Hubbard*, 399 F.3d at 164; quoting *Graham v. Connor*, 490 U.S. 386, 392 n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Instead, a federal pretrial detainee's constitutional rights related to conditions of confinement flow from the Due Process Clause of the Fifth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "[U]nder the Due Process Clauses, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535–36. The proper standard for examining such claims is the standard set forth in *Bell* – whether the conditions of confinement amount to punishment prior to an adjudication of guilt. *Davis v. City of Philadelphia*, 284 F.Supp.3d 744, 752 (E.D. Pa. 2018) (internal citations omitted). Pretrial detention under the Bail Reform Act does not on its face violate the due-process clause of the Fifth Amendment. *United States v. Salerno*, 481 U.S. 739, 742, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Pretrial detention in order to secure a defendant's appearance or protect the public is not punitive; it does not constitute "impermissible punishment before trial" that would violate due process. *See Salerno*, 481 U.S. at 742, 748. As long as it is reasonably related to a legitimate governmental objective, pretrial detention without more does not amount to punishment. However, detention that is not reasonably related to a legitimate goal, or is arbitrary or purposeless, may constitute constitutionally prohibited punishment. *See Bell*, 441 U.S. at 539.

Whether a pretrial detainee has been punished generally turns on whether the conditions have a purpose other than punishment, and whether the totality of the conditions are "excessive" such that they resulted in "genuine privations of hardship over an extended period of time." *Hall-Wadley*, 386 F.Supp.3d 512,516 (E.D.Pa. 2019); quoting *Bell*, 441 U.S. at 538–39; *Hubbard*, 399 F.3d at 159–60. "Absent a showing of an expressed intent to punish on the part of the detention facility officials, … if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 538-39.

In this case, Cook's due process argument fails. He makes only a generic argument that his conditions of confinement run afoul of his Constitutional rights. He makes neither a compelling case of a constitutionally cognizable deprivation nor demonstrates that Pike County Correctional Facility is being deliberately indifferent to the needs and circumstances of the people who are in its custody. Cook has not established that the conditions at the facility are "arbitrary or purposeless." *See Bell,* 441 U.S. at 539. Cook has not shown that the facility and authorities are unable or unwilling to address COVID-19, or that he is not being treated for his symptoms or positive test, as he was transported to the local hospital upon his symptoms increasing. *See Boatwright*, 2020 WL 1639855, at *6–7 (rejecting general Fifth Amendment arguments that applied equally to any detainee, and noting that the prison was taking reasonable recommended precautions); *Lee*, 2020 WL 1541049, at *5 (rejecting Fifth Amendment arguments in light of aggressive precautions being taken by the prison to prevent the spread of COVID-19); *United States v. Villegas*, No. 2:19-cr-568-AB, 2020 WL 1649520, at *2–3 (C.D. Cal. Apr. 3, 2020)(finding no evidence of arbitrary and punitive intent where the

Bureau of Prisons was responding to prevent infectious outbreak, protect inmate health, and preserve internal order); *United States v. Moran*, No. SAG-19-0585, 2020 WL 1663366, at *2 (D. Md. Apr. 3, 2020) (noting that while detention during a pandemic was not optimal, the measures taken by the prison facility were reasonable under the circumstances, so the defendant's allegations did not rise to the level of a constitutional violation); *see also United States v. Boone*, 2:16-CR-00020-TLN, 2020 WL 1865202, at *3 (E.D. Cal. Apr. 14, 2020); *Peterson v. Diaz*, No. 2:19-cv-01480-WBS-GGH, 2020 WL 1640008, *2 (E.D. Cal. Apr. 2, 2020). Indeed, the evidence before the Court shows that the facility is complying with guidelines set forth by the Center for Disease Control and taking steps and precautions to mitigate and control the virus at the facility. *See United States v. Robert Leake*, 19-CR-194 (KBJ), 2020 WL 1905150, at *5 (D.D.C. Apr. 17, 2020). District Courts throughout the country have rejected Constitutional challenges to pretrial detention based on general concerns over the COVID-19 pandemic. *United States v. Hernandez*, 3:19-CR-346-K, 2020 WL 1876102, at *5 (N.D. Tex. Apr. 14, 2020) (collecting cases).

Based on the information before the Court, the Court finds Defendant's conditions of pretrial detention are reasonably related to legitimate government interests. For these reasons, the Court finds that Defendant's constitutional argument fails.

IV. **CONCLUSION**

While the Court is sympathetic to the concerns regarding the spread of COVID-19, and Cook's contraction of the virus, the findings made pursuant to the Court's previous detention orders remain unchanged. The Court has considered the evidence presented by the Government and by Cook, including Cook's medical information and the response of the

Pike County Correctional Facility to the pandemic. However, even considering this information, the balance of the factors under the Bail Reform Act – the nature and circumstances of the offenses charged, the weight of the evidence, the history and characteristics of the defendant, and the danger to the community upon release – mandate that Cook remain detained, as there is no condition or combination of conditions that can reasonably assure the safety of the community should he be released. Further, Cook's argument for release based on a potential violation of his Constitutional rights fails.

For these reasons, Cook's motion for pretrial release (Doc. 288), is **DENIED**.

An appropriate Order will follow.

**Dated: April 22, 2020**                                         *s/ Karoline Mehalchick*
                                                                                **KAROLINE MEHALCHICK**
                                                                                **United States Magistrate Judge**