UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
SCRANTON DIVISION

| | |
|---|---|
| United States of America, | |
| Plaintiff-Respondent, | |
| v. | Crim. No. 3:16-cr-00312-MEM-1 |
| | Civ. No. 3:25-cv-00753-MEM |
| Mark Cook, | |
| Defendant-Movant. | |

**Reply to the Government's Response on Cook's § 2255 Motion**

Mark Cook ("Cook"), by and through the undersigned counsel, hereby files this reply to the government's response in support of his § 2255 Motion.

In Ground One of his § 2255 motion, Cook indicated that his trial counsel engaged in ineffective assistance of counsel for failing to call Carolina Ferrante as a witness. The government's response indicated that the decision to call or not call a witness can be "trial strategy." *See* Docket Entry ("DE") 434 at 17-18. But key here is the need to engage in a thorough investigation before making that decision:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to

> make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington*, 466 U.S. 668, 690–91 (1984). Here, there has not been sufficient information in the § 2255 record as to what investigation was engaged in by trial counsel. Cook submits that had trial counsel engaged in an investigation around this and researched Ferrante's criminal record that multiple independent drug arrests would have been shown both before, during and after the indictment period. Cook further submits that had counsel submitted the same, Court would have found her statements unreliable and excluded them from relevant-conduct consideration. The resulting offense level would have been several levels lower.

For Grounds Two and Eight, again, trial strategy has limits. The drug amounts that were at issue here were drugs that were based on statements by cooperating witnesses that sought leniency in their own cases. No physical drugs were recovered, no money seizures occurred, no controlled buys or surveillance were conducted and there was no factual basis to support the government's conclusions. Cook points out that a hearing to test the reliability of the cooperator statements would have been appropriate here. *See United States vs. Fatico*, 603 F.2d 1053 (2d Cir. 1979).

Cook submits that the failure to seek a *Fatico* hearing constitutes deficient performance under *Strickland*. The impact of this is the lack of reliable information to assure fact finding reliability at sentencing. *See United States v. Miele*, 989 F.2d 659, 664 (3d Cir. 1993) ("Several other circuits have applied the Commission's

'sufficient indicia of reliability' standard to assure fact finding reliability at sentencing."), *see also United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007), *quoting* U.S.S.G. § 6A1.3(a) (courts may consider any evidence at sentencing "provided that the information has sufficient indicia of reliability to support its probable accuracy"), *United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992) ("a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role."). The failure to engage in a sufficient investigation caused Cook's offense level substantially and as such is not appropriate trial strategy. Cook submits that a proper investigation would have prevented this, showing prejudice.

Regarding ground three, Cook submitted that trial counsel was ineffective for failing to call Kathleen Healey. This witness would have shown, through Facebook messages, witness recantations, medical expert reports, and statements from third-party witnesses that underlying assault allegation was false and that Petitioner had no intent or reason to induce any witness to recant. The Government indicated that the court found that the documents that trial counsel presented were not credible. DE 434 at 19, *referencing* DE 406 at 10-13. However, cook indicates that there were Facebook messages between Cook and Healey indicating that Healey pursed a relationship with Cook after the alleged assault. Further, Healey denied making the statement that "she knew the Defendant to be a drug dealer" in the *Franks* hearing.

Trial counsel also was in possession of a report from Dr. Silvia Brown who examined the alleged injury Healey and concluded that it was impossible for the injury to have been caused by Cook in the manner alleged. The report, had it been offered, would have negated the Government's theory of obstruction by showing that there was no assault. In addition, trial counsel was in possession of written statements from Heather Keith and Kristen Strouse, both of whom attested that Mr. Cook was nonviolent and that Healey was, in fact, the aggressor in their relationship. In addition, Cook's son, who was present during the alleged incident, made a statement to prior counsel that no assault ever took place. These documents were not submitted to the court.

Further, Cook later realized that Tim Harding, the investigator who questioned Healey, was later dismissed from the force for violating a Protection From Abuse (PFA) order.

Cook further indicates that his prior attorney, Jody Kalonoski, instructed him to obtain a notarized statement recanting prior statements. But again, this was not explained in a hearing, sidebar or any other place.

The Supreme Court has held that defense counsel has a duty to conduct a reasonable investigation into all potentially exculpatory evidence. *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003). A failure to present available exculpatory and impeachment evidence constitutes ineffective assistance when the evidence could have altered the outcome of the proceeding. *Showers v. Beard*, 635 F.3d 625, 631 (3d Cir. 2011). There was ample evidence to combat the

obstruction of justice enhancement, but it was not presented to the court. The impact is the likelihood that the court would have denied the enhancement for obstruction of justice.

In addition, there was ineffective assistance of counsel for failure to investigate regarding the obstruction charge for the purported forgery of prison officials character letters (Ground Four)

Cook alleged that trial counsel was ineffective for failing to investigate and properly refute the enhancement for obstruction that was based on the correctional officers and their submission of letters of support for Cook.

Officer Price, a key correctional officer referenced during Cook's sentencing, was required to resign after admitting to having improper personal contact with Petitioner's mother and son while Petitioner was incarcerated.

This misconduct was the subject of an internal investigation, and the information was available to defense counsel through reasonable diligence. Attorney Cesare's failure to obtain and present this material deprived the Court of evidence directly undermining the credibility of Officer Price and the reliability of institutional records used against Cook. This information was not used by trial counsel in Cook's sentencing defense.

Attorney Cesare misrepresented to Petitioner that she "attempted to interview the corrections officers" but was unable to reach them. Cook submits that did not happen and asks for proof from trial counsel. Cook submits that a reasonable attorney would have obtained the officer's personnel and disciplinary records under *Brady v.*

*Maryland*, 373 U.S. 83 (1963), or requested a subpoena duces tecum under Federal Rule of Criminal Procedure 17(c) to compel the disclosure of the internal investigation file.

Regarding the letter, there was no handwriting analysis to respond to the statements that the letter was a forgery. Trial counsel thus permitted the Government to rely on unauthenticated hearsay in violation of due process. The impact here is that this evidence was used in order to determine that there was an obstruction of justice.

For Ground Five, Counsel was Ineffective for failing to challenge the invalid prison drug test and denial of due process in violation of DOC and BOP Policy.

The Government's response contends that Petitioner's disciplinary sanction for a positive urinalysis result was properly imposed and that defense counsel was not ineffective for failing to challenge the results. The Government asserts that "the test was administered in accordance with procedure" and that "Petitioner was afforded all due process protections" under *Wolff v. McDonnell*, 418 U.S. 539 (1974).

The urinalysis was administered by an officer who was not certified in urine-sample collection or chain-of-custody handling, in direct violation of Pennsylvania Department of Corrections Policy DC–ADM 801 and BOP Program Statement 6060.08 (Urine Surveillance and Narcotic Identification). These regulations require that samples be collected only by trained and certified personnel, chain of custody be fully documented on Form BP–360; and any inmate contesting an initial positive result must be offered secondary laboratory

confirmation by a certified outside laboratory (commonly EMIT or GC/MS testing). In addition, Cook was only given an instant result despite appealing to the warden the was afforded confirmatory lab testing by an accredited laboratory. Both DOC and BOP rules are clear: any positive urinalysis must be confirmed by a Gas Chromatography/Mass Spectrometry (GC/MS) test before disciplinary sanctions or loss of good time can be imposed. See BOP Program Statement 6060.08, §9(b)(1); PA DOC DC–ADM 801, §2(A)(4).

Trial counsel failed to investigate or challenge the reliability of the test. Cook provided counsel with copies of his appeals to the Warden showing he had contested the result and identified procedural violations, yet counsel ignored the issue and permitted the unverified result to remain part of the record. Competent counsel would have obtained the full disciplinary file and chain-of-custody documentation, requested confirmatory GC/MS testing or lab certification reports; and presented expert or policy evidence showing noncompliance with DOC and BOP standards. Counsel's inaction fell below professional norms and deprived Cook of a meaningful opportunity to challenge false or unreliable institutional evidence.

Cook also indicated that he was prescribed multiple medications, several of which could produce a false positive under immunoassay screening. DOC policy requires medical review before discipline when medications may interfere with results. Counsel failed to obtain medical records or request expert pharmacological review, leaving uncontested a test result that was unreliable on its face. The impact of this failure was that the Court was influenced with a perception of Cook's conduct

and credibility during sentencing. This contributed to an unfair characterization of his behavior in custody. Counsel's failure to investigate and challenge these results caused a situation where the Court was made to believe that Cook was someone who he was not. To the extent that this was considered by the Court in any amount, it prejudiced Cook. *See Glover v. United States*, 531 U.S. 198, 199 (2001) ("any amount of actual jail time has Sixth Amendment significance.").

Grounds Twelve and Fourteen indicates that Counsel was ineffective for failing to explain the plea agreement in person, misrepresenting its consequences and inducing an unknowing plea.

The Government indicated that Cook's guilty plea was knowing and voluntary because the conducted a Rule 11 colloquy and Petitioner signed the written plea agreement. But Cesare deprived Cook of the opportunity to ask questions, receive legal advice and verify that the agreement accurately reflected his understanding. As indicated in his memorandum in support, trial counsel submitted the documents to him to review by fax.

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Counsel must therefore ensure the client understands the plea's material terms and sentencing implications. *Hill v. Lockhart*, 474 U.S. 52 (1985), *See also United States v. Day*, 969 F.2d 39 (3d Cir. 1992) ("Although in this case Day concedes that he was notified of the terms of the plea bargain, he alleges that the advice that

he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer. That, we hold, also states a Sixth Amendment claim."), *see also United States v. Shedrick*, 493 F.3d 292 (3d Cir. 2007) (affirmative misadvice about sentence length renders plea involuntary).

By sending the plea by fax and failing to meet, Cesare deprived Cook of the opportunity to ask questions, receive legal advice, and verify that the agreement accurately reflected his understanding. Her assurances that there would be no enhancements and that time served would be considered were affirmative misrepresentations that induced him to plea. As such, trial counsel was ineffective.

Similarly, by informing Cook "that there would be no foreseeable enhancements," and that the Court "would take into account all your time already served," and that a leadership, obstruction, or relevant-conduct enhancement was "off the table," counsel engaged in an illegal promise that induced Cook to plead guilty. *See Padilla v. Kentucky*, 559 U.S. 356 (2010) (counsel must correctly advise on clear legal consequences), *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).

Ground Thirteen indicated that Trial Counsel failed to investigate and interview halfway house staff to refute the government's claims.

The government alleged that Cook managed drug sales from the federally supervised halfway house was demonstrably false and easily disproven through minimal investigation.

Trial Counsel's failure to interview halfway-house staff, obtain Petitioner's conduct reports, or present corroborating evidence of compliance was not strategic —

it was negligent. This omission violated counsel's duty to investigate and present readily available exculpatory evidence. *See Strickland v. Washington*, 466 U.S. 668 (1984). Cook was under strict supervision at the halfway house and was prohibited from possessing or using a cell phone. The records show no misconduct during his stay, and multiple clean drug tests were documented. Welch, the witness, had a criminal history of theft and dishonesty, undermining his credibility. Halfway-house staff could have testified that Cook was in good standing, employed, and compliant with the program rules, but they were not contacted.

As indicated previously, trial counsel has a duty to engage in a reasonable investigation into potential defenses and evidence. *Strickland*, 466 U.S. at 690–91; *Rompilla v. Beard*, 545 U.S. 374 (2005), Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005) (Defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable and thus constituted ineffective assistance.).

Had counsel interviewed halfway-house staff or obtained Petitioner's conduct records, she could have presented concrete proof that Cook was under 24-hour supervision with restricted communication access, no evidence linked him to any contraband or cell phone use, staff consistently documented his compliance and sobriety and that Welch was not even present long enough to conspire with him. This would have undermined the Government's argument that Petitioner continued drug-related conduct during reentry. Cook submits that influenced the Court's perception of recidivism and the final guideline sentence.

## CONCLUSION

Wherefore, premises considered, Cook prays that this case be set for an evidentiary hearing and that appropriate § 2255 relief be granted.

Respectfully Submitted,

/s/ Jeremy Gordon
Jeremy Gordon
315 S. Bois D'Arc
Forney, TX 75126
Tel: 972-564-4644
Email: Jeremy@guestandgray.com
TX Bar No. 24049810

*LR 83.8.2.1 Counsel for Cook*

I hereby certify that a true and correct copy of the foregoing was duly served on all counsel of record via the Court's CM/ECF system this 17th day of November 2025.

/s/ Jeremy Gordon